UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THERESA JENNER, individually and on behalf of all others similarly situated, | § § § | |
| PLAINTIFFS, | § § | |
| v. | § § | CASE NO. |
| VOLVO CARS OF NORTH AMERICA, LLC, | § § § § | |
| DEFENDANT. | § | |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

Plaintiff Theresa Jenner, individually and on behalf of a Class of similarly situated consumers, alleges:

### I. INTRODUCTION

1. Defendant Volvo Cars of North America, LLC ("Volvo") builds cars with the ability to receive a satellite radio signal. Since at least 2008, all Volvo cars include this feature, which is useful only to car owners who subscribe to a third-party service that broadcasts radio content from a satellite.

2. Upon information and belief, there is a defect in the software for the satellite receiver—called an "rdar"—installed in Volvos whereby the device continues to search for a satellite signal even when the car is not running. This drains the car's battery when the car is not running, which in turn prevents the car owner from starting their car.

3. Volvo knows all about this defect, which is easily fixed with a "software upgrade" to the rdar. Volvo has not disclosed this defect to its customers, however. Moreover, Volvo is effectively holding its customers hostage by refusing to install the

"software upgrade" without a charge of hundreds of dollars to repair a defective device that is unnecessary for the car's safe operation and is, in many cases, simply unwanted. This case seeks redress for the harm caused by Volvo's conduct towards its customers.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because the Class consists of more than 100 members, the amount in controversy exceeds the sum or value of five million dollars ($5,000,000.00) exclusive of recoverable interest and costs, and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is located in this District.

## III. PARTIES

6. Plaintiff, Theresa Jenner, resides in Fall River, Massachusetts. Ms. Jenner brings this action individually and as a representative of a Class of similarly situated consumers.

7. Defendant Volvo Cars of North America, LLC (referred to throughout this Complaint as "Defendant" or "Volvo") is a Delaware limited liability company with its principal place of business in Rockleigh, New Jersey. It is a subsidiary of Volvo Car Corporation of Gothenburg, Sweden, which is a subsidiary of Geely Auto of Hangzhou, China.

8. Volvo, including its owners, employees, parent companies, subsidiaries, affiliates, and agents, developed, designed, manufactured, assembled, tested, inspected, marketed, promoted, advertised, warranted, distributed, and sold vehicles branded

"Volvo."

9. Volvo conducts substantial business within New Jersey and throughout the United States through the marketing, distribution, and sale of Volvo-branded vehicles.

### IV. FACTS

10. Theresa Jenner bought a new Volvo S40 on April 29, 2009 from Tasca Volvo, an authorized Volvo Dealer in Cranston, Rhode Island.

11. When she bought the car, Ms. Jenner also purchased an extended warranty covering mechanical repairs to the car for a period of 72 months or until the car was driven for 75,000 miles.

12. On September 15, 2014, Ms. Jenner's car would not start because its battery was dead. Ms. Jenner had the car towed to Tasca Volvo, where the battery was replaced. By this time, Ms. Jenner had driven the car for more than 75,000 miles, and the extended warranty coverage was no longer in effect. Ms. Jenner received an invoice describing the work done on her car, but no mention is made of the car's defective battery-draining feature that enables it to receive a satellite radio signal.[1] Tasca Volvo charged Ms. Jenner $248.91 for this work, and Ms. Jenner paid this amount (plus sales tax).

13. Only four and a half months later, on January 28, 2015, Ms. Jenner parked her car in a garage, where it stayed for about 48 hours to wait out a blizzard, which was unofficially named Winter Storm Juno. Ms. Jenner could not start the car when she returned to it because the battery had once again drained. She and her husband subscribed to AAA Roadside Assistance, which dispatched a technician to examine the vehicle's

---

[1] A copy of this invoice is attached to this Complaint as Exhibit A.

electrical system and test the battery. That testing revealed that there was a drain on the car electrical system when it was shut off. The car was jumpstarted, driven to Tasca Volvo, and Tasca Volvo was made aware of the roadside assistance technician's findings. Tasca Volvo made repairs and issued another invoice to Ms. Jenner, which states:

> ,,,,80518 battery, charging system test o.k. found .06a draw, fault
> ,,,,traced and found rdar to be off line, recover rdar and download
> ,,,,software upgrade.[2]

Tasca Volvo charged Ms. Jenner $299.77 for this work, and Ms. Jenner paid this amount (plus sales tax).

14. The word "rdar" in Ms. Jenner's invoice notes stands for "remote digital audio receiver." This is the part of Volvo cars that is intended to receive radio signals from third-party satellite radio providers.

15. A Volvo car equipped with an "rdar"—like Ms. Jenner's Volvo S40—will continue to draw power from the battery *even when the car is not running* regardless of whether the owner is subscribed to a third-party satellite radio service. In essence, the "rdar" causes the car to search for a satellite radio signal even though its owner has not subscribed to a third-party service.

16. The drain on the battery caused by the "rdar" when the car is not running is a defect. This defect has drained the batteries of Volvo car owners throughout the United States, and caused them to encounter the same problems as Ms. Jenner.

17. The defect cannot be mitigated by having the "rdar" turned off. When Tasca Volvo told Ms. Jenner about the issue with the rdar, Ms. Jenner asked to remove or disable the device. She was told by Tasca Volvo that the "rdar" was integrated into the

---

[2] A copy of this invoice is attached to this Complaint as Exhibit B.

car's electrical system and could not be removed. Thus, the only way for Ms. Jenner to eliminate the risk of future battery failure was to pay hundreds of dollars for a "software upgrade" to repair a device she did not use.

18.     Volvo car owners have documented their problems in several online forums. One such owner described the experience as follows:

> had same problem with my 2010. After 3 days of not driving, battery dead. happened once, dealer said nothing's wrong with it and I thought we left something on. Second time, took it to dealer and they changed the battery. 3rd time, new battery was dead and they did a RDAR software upgrade and said it was causing a drain because it would stay "online". I wish they would I have told me that the first time, so it wouldn't have been so agonizing dealing with a dead car, tow truck...etc...[3]

Another owner described the experience like this:

> I have just bought this C30 2009 left car for one week and battery was totally drained. It would not hold charge and I took to dealer.
> I have just replaced windshield due to stone damage.
> The warranty is expiring in 1 month.
> Dealer reloaded firmware saying that there was drain from RDAR and it is firmware error.
> Seems a bit hard to believe that this issue is just fixed now in 5 year old vehicle. I found from internet search that RDAR is related to satellite radio which I am not using.
> Has anyone heard of this error?
> How can I find the equipment and info to read and identify the firmware codes?
> Wanting to love my used C30 but struggling…[4]

19.     As these comments illustrate, Volvo has been and is aware of the defect in its vehicles related to "rdar." But Volvo did not and does not disclose the

---

[3] http://forums.swedespeed.com/showthread.php?183619-Battery-Drain-Problem (comment of "myxc60" dated 12-05-13, 8:20am) (last visited June 23, 2015).
[4] http://www.matthewsvolvosite.com/forums/viewtopic.php?t=64097 (comment of "TonyV" dated 22 Jun 2014, 22:16) (last visited June 23, 2015). Other examples of comment forums containing similar descriptions of the same defect include http://volvoforums.com/forum/volvo-c70-14/2011-c70-battery-drain-62586/page3/ (last visited June 23, 2015) and http://repairpal.com/why-does-my-c30-battery-drain-for-no-apparent-reason-311 (last visited June 23, 2015).

defect to purchasers at the time of purchase, nor did Volvo conduct a recall of its vehicles or otherwise make Volvo owners aware of the defect through any kind of publicity or notification.

20. Instead, Volvo waited for car owners to discover the defect on their own, usually through an instance where the car would not start because of a drained battery. And when the car owners were forced to bring their vehicles in for needed repair in order to drive them again, Volvo charged them for the repair—a "software upgrade" to the defective device—instead of providing it for free.

## V. CLASS ALLEGATIONS

21. Plaintiff seeks to represent the following Class:

> All persons in the United States who are current or former owners of a Volvo-branded car marketed, distributed, and/or sold by Defendant with an "rdar." Excluded from the Class are Defendant and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge to whom this case is assigned and his/her immediate family.

Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.

22. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

23. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

24. <u>Numerosity</u>. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are not less than tens of thousands of members of the Class, the precise number of Class members is unknown to Plaintiff, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

25. <u>Commonality and Predominance</u>. Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a) Whether Defendant engaged in the conduct alleged herein;

b) Whether Defendant designed, advertised, marketed, distributed, sold, or otherwise placed defective Volvo-branded cars into the stream of commerce in the United States;

c) Whether Defendant knew that its Volvo-branded cars were defective;

d) Whether Defendant's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

e) Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

f) Whether Plaintiff and the other Class members are entitled to damages and other monetary relief.

26. <u>Typicality</u>. Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's wrongful conduct as described above.

27. <u>Adequacy</u>. Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Class she seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

28. <u>Declaratory and Injunctive Relief</u>. Federal Rule of Civil Procedure 23(b)(2): Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

29. <u>Superiority</u>. Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory

judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
## (N.J. STAT. ANN. § 56:8-1, *ET SEQ.*)

30. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

31. Plaintiff brings this Count on behalf of the Class.

32. The NJCFA protects consumers such as Plaintiff and members of the Class against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…" N.J. Stat. Ann. § 56:8-2.

33. Defendant engaged in unlawful conduct in violation of the NJCFA by making knowing and intentional omissions. Defendant knowingly failed to disclose the defect in its Volvo-branded cars in order to secure their sale and offer them at a premium price.

34. Defendant did not disclose to its customers the true nature of the inherent defect related to "rdar," which was not readily discoverable, if at all, until after the express warranty expired. As a result, Plaintiff and the other Class members were fraudulently induced to purchase Volvo-branded cars with the defect and all of the

resultant problems. These facts—that Volvo concealed—were solely within its possession.

35. Defendant intended that Plaintiff and all Class members rely on the acts of concealment and omissions so that they would purchase Volvo-branded cars.

36. Defendant's conduct caused Plaintiff and Class members to suffer an ascertainable loss. In addition to direct monetary losses such as repair costs, Plaintiffs and Class members have suffered an ascertainable loss by receiving less than what was promised.

37. A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by Plaintiff and the Class. Had the defect in the Volvo-branded cars been disclosed, consumers would not have purchased them or would have paid less for them had they decided to purchase them.

## COUNT II
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

38. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

39. Plaintiff brings this Count on behalf of the Class.

40. Defendant is and was at all relevant times a "merchant" as defined under the Uniform Commercial Code ("UCC").

41. Defendant's Volvo-branded cars are "goods" as defined under the UCC.

42. Defendant impliedly warranted that its Volvo-branded cars were of a merchantable quality.

43. Defendant breached the implied warranty of merchantability, as the Volvo-branded cars were not of a merchantable quality due to the defect and the

associated problems caused by the defect.

44.     As a direct and proximate result of Defendant's breach of the warranty of merchantability, Plaintiff and the Class were injured and are entitled to damages.

45.     Any attempt by Defendant to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here because Defendant knowingly sold a defective product without informing consumers about the defect.

46.     The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff and member of the Class. Among other things, Plaintiff and members of the Class had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Volvo. A gross disparity in bargaining power existed between Volvo and Class members, and Volvo knew or should have known that its Volvo-branded cars were defective at the time of sale.

47.     Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of these obligations as a result of Defendant's conduct described herein.

## COUNT III
## COMMON LAW FRAUD

48.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

49.     Plaintiff brings this Count on behalf of the Class.

50.     Defendant made material omissions concerning a presently existing or past fact. For example, Defendant did not disclose to its customers the true nature of the inherent defect related to "rdar," which was not readily discoverable, if at all, until after

the express warranty expired. As a result, Plaintiff and the other Class members were fraudulently induced to purchase the Volvo-branded cars with the defect and all of the resultant problems.

51. These omissions were made by Defendant with knowledge of their falsity, and with the intent that Plaintiff and Class members rely on them.

52. Plaintiff and Class members suffered damages as a result.

## COUNT IV
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

53. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

54. Plaintiff brings this Count on behalf of the Class.

55. Every contract in New Jersey contains an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

56. Defendants breached the covenant of good faith and fair dealing by, inter alia, failing to notify Plaintiff and Class members of defect related to "rdar," and failing to fully and properly repair this defect.

57. Defendant acted in bad faith and/or with a malicious motive to deny Plaintiff and Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, respectfully requests that the Court enter judgment in their favor and against Defendants, as follows:

A. Granting certification of the proposed Class, including appointment of Plaintiff's counsel as Class Counsel;

B. Temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged herein;

C. Ordering injunctive relief in the form of a recall or free replacement program;

D. Awarding costs, restitution, treble damages, and disgorgement in an amount to be determined at trial;

E. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

F. Awarding costs and attorneys' fees; and

G. Ordering such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

## CERTIFICATION

Pursuant to Local Civil Rule 11-2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

DATED this 12th day of August, 2015.        Respectfully submitted,

/s/ *Joseph Alan Venti*
Joseph Alan Venti (SBN 031742008)
joeventi@wcblegal.com
WILLIAMS CUKER BEREZOFSKY, LLC
Woodland Falls Corporate Center
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002-1163
856.667.0500
856.667.513 (fax)

Michael J. Quirk
mquirk@wcblegal.com
*Pro Hac Vice Forthcoming*
WILLIAMS CUKER BEREZOFSKY, LLC
1515 Market Street, Suite 1300
Philadelphia, PA 19102
215.557.0099
215.557.0673 (fax)

Marc R. Stanley
marcstanley@mac.com
*Pro Hac Vice Forthcoming*
Martin Woodward
mwoodward@stanleylawgroup.com
*Pro Hac Vice Forthcoming*
STANLEY LAW GROUP
6116 N. Central Expwy., Suite 1500
Dallas, TX  75206
214.443.4300
214.443.0358 (fax)

Andrew S. Kierstead
ajkier@aol.com
*Pro Hac Vice Forthcoming*
LAW OFFICE OF ANDREW KIERSTEAD
1001 SW 5th Avenue, Suite 1100
Portland, OR 97204
Tel. (508) 224-6246
Fax (508) 224-4356

Peter N. Wasylyk
pnwlaw@aol.com
*Pro Hac Vice Forthcoming*
LAW OFFICES OF PETER N. WASYLYK
1307 Chalkstone Avenue
Providence, RI 02908
Tel. (401) 831-7730
Fax (401) 861-6064

*Counsel for Plaintiff and the Class*