NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THERESA JENNER, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br>    v.<br>VOLVO CARS OF NORTH AMERICA LLC,<br>                Defendant. | Civil Action No.: 15-cv-6152<br><br>OPINION |

**CECCHI, District Judge.**

**I.    INTRODUCTION**

This matter comes before the Court on defendant Volvo Cars of North America LLC's ("Defendant") motion to dismiss (ECF No. 125) plaintiff Theresa Jenner's ("Plaintiff") second amended putative class-action complaint (ECF No. 124), pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposed Defendant's motion (ECF No. 129), and Defendant replied (ECF No. 130). The Court has considered the submissions made in support of and in opposition to the motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendant's motion to dismiss is granted in part and denied in part.

**II.    BACKGROUND**

Since at least 2004, and up to and including 2018, Defendant sold vehicles equipped with satellite radio. ECF No. 124 at ¶¶ 10, 25. In order for the radio to receive audio signals, Defendant installed a digital audio receiver system, known as "RDAR," in each satellite radio-equipped vehicle. *Id.* at ¶¶ 2, 10. Plaintiff alleges that as early as September 2008, Defendant identified a defect with the RDAR—namely, that the system did not turn off or enter sleep mode. *Id.* at ¶ 11.

As the RDAR operated continuously, it would completely drain the vehicle's batteries, rendering them inoperable. *Id.* at ¶ 2. Without functioning batteries, the vehicle then could not start. *Id.*

Plaintiff further alleges that Defendant was aware that this defect was impacting consumers. Specifically, Plaintiff contends that Defendant knew Volvo-owners were complaining of RDAR-related issues on online forums (*id.* at ¶¶ 14–20), and that customers were submitting warranty claims to have their RDAR components fixed (*id.* at ¶ 23). Further, Plaintiff contends that Defendant provided its dealerships with technical bulletins, explaining how to address RDAR issues and complaints. *Id.* at ¶ 24. Nevertheless, despite this knowledge, Plaintiff asserts that Defendant did not disclose this defect to customers at the time of their purchase, did not recall any of its vehicles, or otherwise notify Volvo-owners of the defect through any kind of publicity or notification. *Id.* at ¶ 25. Instead, Plaintiff contends:

> Volvo intentionally waited for car owners to discover the defect on their own, usually through an instance where the car would not start because of a drained battery. And when the car owners were forced to bring their vehicles (ostensibly out of warranty) in for needed repair in order to drive them again, Volvo charged them for the repair—a "software upgrade" to the defective device—instead of providing it for free.

*Id*. at ¶ 26.

Plaintiff Theresa Jenner, a resident of Fall River, Massachusetts (*id*. at ¶ 6), purchased a new Volvo S40 on April 29, 2009 from Tasca Volvo, an authorized Volvo dealership in Cranston, Rhode Island (*id.* at ¶ 28). With her vehicle, Plaintiff also purchased an extended warranty covering mechanical repairs for 72 months or until the car was driven 75,000 miles. *Id.* at ¶ 29.

On March 7, 2012, Plaintiff's Volvo would not start, and it was towed to Tasca Volvo for repair. *Id.* at ¶ 30. Tasca Volvo completed the repair without mentioning RDAR, and did not charge Plaintiff for the work because her vehicle was still under warranty. *Id.* On September 15, 2014, Plaintiff's Volvo again would not start, and it was towed back to Tasca Volvo, where the dealership

replaced the car's battery. *Id.* at ¶ 31. Tasca Volvo made no mention that the dead battery could have been caused by the defective RDAR system. *Id.* Because Plaintiff's warranty had expired by September 2014, Tasca Volvo charged and Plaintiff paid $248.91 for replacing the battery. *Id.* On January 28, 2015, despite being equipped with a new battery approximately four months earlier, Plaintiff's car would not start for a third time. *Id.* at ¶ 32. Instead of taking the car to Tasca Volvo for repairs, Plaintiff first called AAA Roadside Assistance ("AAA"). *Id.* The dispatched AAA technician determined through a diagnostic test that there was a drain on the car's electrical system when it was shut off. *Id*. The car was jumpstarted, and driven to Tasca Volvo for further work, where the dealership was alerted to the technician's findings. *Id.* After inspecting the vehicle, the dealership determined Plaintiff's car had a defective RDAR system. *Id.* To cure the defect, Tasca Volvo downloaded and installed in Plaintiff's vehicle a software upgrade, which fixed the problem. *Id.* For this work, Plaintiff was charged and paid $299.77. *Id.*

Plaintiff filed her Second Amended Class Action Complaint on February 28, 2022. *See generally id*. Therein, Plaintiff asserts four causes of action: violation of the New Jersey Consumer Fraud Act ("NJCFA"), New Jersey Statute Annotated §§ 56:8-1 *et seq.* (Count I); 2) breach of the implied warranty of merchantability (Count II); 3) common law fraud (Count III); and 4) violation of the Rhode Island Deceptive Trade Practices Act ("RIDTPA"), Rhode Island General Laws §§ 6-13.1-2 *et seq.* (Count IV).

On March 14, 2022, Defendant filed a motion to dismiss Plaintiff's Second Amended Complaint, arguing that Rhode Island law applies to this action, and that Plaintiff has failed to state a claim for relief. ECF No. 125. Plaintiff filed an opposition to the motion on April 18, 2022 (ECF No. 129), to which Defendant replied on April 25, 2022 (ECF No. 130).

3

### III.  LEGAL STANDARD

**Federal Rule of Civil Procedure 12(b)(6)**

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor of the non-moving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement," will not withstand dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (citations omitted). Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### IV.  DISCUSSION

#### a)  Choice of Law

The parties dispute whether Plaintiff's claims should be subject to New Jersey or Rhode Island law. ECF No. 125 at 6–11; ECF No. 129 at 11–14. However, while New Jersey's choice of law principles apply to this matter since federal courts with diversity jurisdiction must apply the choice of law principles of the forum state, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941), the Court need not address the choice of law arguments at this juncture. "Applying the factors necessary to determine choice of law . . . is a very fact-intensive inquiry." *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (citing *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009) (postponing choice of law analysis "until the parties present a

4

factual record full enough")). The choice of law analysis, therefore, has "routinely been found to be premature at the motion to dismiss phase of a class action lawsuit." *In re Volkswagen Timing Chain Product Liability Litigation*, No. 16-cv-2765, 2017 WL 1902160, at *10 (D.N.J. May 8, 2017); *see also Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, No. 12-cv-6590, 2013 WL 1431680, at *5 (D.N.J. Apr. 9, 2013) (choice of law analysis on motion to dismiss premature); *In re Samsung DLP Television Class Action Litig.*, No. 07-cv-2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009) (same). Here, the Court requires a more developed factual record to make a choice of law conclusion, and thus declines to determine whether New Jersey or Rhode Island law applies at this stage.

### b) NJCFA (Count I)

Defendant argues that Plaintiff's NJCFA claim must fail because Rhode Island law should apply to Plaintiff's consumer fraud claims. ECF No. 125 at 10–11. However, as noted above, the Court need not resolve any choice of law disputes at the motion to dismiss stage of litigation. And further, Defendant does not advance any argument that Plaintiff's NJCFA claim is otherwise deficient. Accordingly, Defendant's motion to dismiss as to Plaintiff's NJCFA claim is denied.

### c) Breach of the Implied Warranty of Merchantability (Count II)

Defendant also contends that Plaintiff has insufficiently alleged her claim for a breach of the implied warranty of merchantability. Specifically, Defendant asserts that Rhode Island law applies to this claim, and, as such, Plaintiff must allege that she was in vertical privity with Defendant. ECF No. 125 at 16–17. Defendant argues, however, that Plaintiff has failed to do so because Plaintiff alleges that she purchased her vehicle and had it repaired at an independent dealership, not with or at Defendant directly. *Id.* at 17. Thus, Defendant avers there is no vertical privity relationship between Plaintiff and Defendant, and her warranty claim must be dismissed.

5

And in any event, Defendant argues that even if Plaintiff had pleaded such a relationship, her claim is barred by the operative four-year statute of limitations under either Rhode Island or New Jersey law. *Id.* at 17–18. According to Defendant, Plaintiff's warranty claim accrued in 2009 when she purchased her vehicle, and thus it should have been filed no later than 2013 to comply with the four-year statute of limitations. *Id.* As Plaintiff did not bring the claim until 2015, Defendant contends it is untimely.

By contrast, Plaintiff argues that she is not required to plead vertical privity because New Jersey law, which has no such requirement, applies to her claim. ECF No. 129 at 22–25. Moreover, Plaintiff asserts that her implied warranty claim is timely under either New Jersey or Rhode Island law, as the four-year statute of limitations was tolled until Tasca Volvo informed Plaintiff of the RDAR issue in January 2015, and Plaintiff then initiated this action in August 2015 within the relevant statute of limitations period. *Id.* at 25–28.

To determine whether New Jersey or Rhode Island law applies, and thus whether Plaintiff must allege vertical privity to sufficiently assert her implied warranty claim, would require the Court to engage in a complete choice of law analysis. Such an analysis is premature at this stage. *See Opheim v. Aktiengesellschaft*, No. 20-cv-2483, 2021 WL 2621689, at *9 (D.N.J. June 25, 2021) (finding that a determination on privity in a breach of implied warranty claim "unsuitable for adjudication on a Rule 12(b)(6) motion"); *see also Gujral v. BMW of N. Am., LLC*, No. 19-cv-20581, 2022 WL 3646627, at *4 n.5 (D.N.J. Aug. 23, 2022). Nevertheless, because it appears that Plaintiff brings her warranty claim under New Jersey law (ECF No. 129 at 25 ("New Jersey law therefore applies to [Plaintiff's] implied warranty claim."), the Court will apply New Jersey law to the warranty claim on this motion. *See Harper*, 595 F. Supp. 2d at 491 (examining the claims

under the assumptions that New Jersey law governs as that is what the plaintiffs presented, where the choice of law analysis was not yet proper).

Under New Jersey law, the statute of limitations for a breach of implied warranty of merchantability claim is four years.[1] N.J. Stat. Ann. § 12A:2-725. The cause of action for breach of an implied warranty accrues "when delivery of the product is made, regardless of the purchaser's lack of knowledge" of the defect, unless the statute of limitations can be tolled. *DeFillippo v. Whirlpool Corp.*, No. 18-cv-12523, 2019 WL 4127162, at *13 (D.N.J. Aug. 30, 2019). The statute of limitations for an implied warranty claim can be tolled if a plaintiff demonstrates that defendant engaged in some form of fraudulent concealment. *In re Fieldturf Artificial Turf Marketing & Sales Practices Litig.*, No. 17-md-2779, 2018 WL 4188459, at *18 (D.N.J. Aug. 31, 2018). To adequately plead fraudulent concealment for purposes of tolling, a plaintiff must demonstrate: "(1) wrongful concealment by the [defendant], resulting in (2) plaintiff's failure to discover the operative facts forming the basis of [her] cause of action during the limitations period (3) despite the exercise of diligence." *In re Volkswagen Timing Chain Product Liability Litigation*, 2017 WL 1902160, at *14 (*Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 523 (D.N.J. 2008)).

Here, Plaintiff has sufficiently pleaded fraudulent concealment, tolling the statute of limitations until she learned of the RDAR defect in her vehicle in January 2015. Specifically, Plaintiff alleges that Defendant became aware of the issues with the RDAR as early as 2008 (ECF No. 124 at ¶ 11), attempted to remedy the problem with their RDAR suppliers (*id.* at ¶¶ 12–13, 23), and advised dealers as to how to handle RDAR issues (*id.* at ¶ 24). Plaintiff further alleges that Defendant did not alert Volvo owners of the defect until their warranties had expired, forcing

---

[1] The parties agree that a four-year statute of limitations applies to Plaintiff's implied warranty of merchantability claim whether it is analyzed under New Jersey or Rhode Island law. ECF No. 125 at 17; ECF No. 129 at 25.

consumers to pay for RDAR repairs. *Id.* at ¶¶ 66, 73. And moreover, Plaintiff exercised due diligence to uncover the defect by repairing her car's ignition and battery issues multiple times, including hiring AAA Roadside Assistance to perform an electrical system diagnostic test on the vehicle to identify the source of the battery drain. *Id.* at ¶¶ 30–32. In sum, Plaintiff has adequately pleaded fraudulent concealment for purposes of tolling. *In re Volkswagen Timing Chain Product Liability Litigation*, 2017 WL 1902160, at *14 (holding that similar allegations pleaded fraudulent concealment). Thus, to the extent Defendant moves to dismiss Plaintiff's implied warranty claim on statute of limitations grounds, that application is denied.

Turning to the merits of Plaintiff's claim, "under an implied warranty of merchantability, a manufacture[r] warrants to deliver a product that is reasonably suitable for ordinary uses it was manufactured to meet." *Greene v. BMW of N. Am.*, No. 11-cv-4220, 2013 WL 5287314, at *3 (D.N.J. Sept. 17, 2013) (citing *Green v. G.M.C.*, 2003 WL 21730592, at *6 (N.J. Super. Ct. App. Div. July 10, 2003)). In the car manufacturing context, a vehicle is merchantable if it "can provide safe, reliable transportation." *Henderson v. Volvo Cars of N. Am., LLC*, No. 09-cv-4146, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010). According to the pleadings, the RDAR defect depleted the power reserves of an impacted vehicle's batteries to such an extent that a driver could not start her car. ECF No. 124 at ¶ 2. Indeed, because of an RDAR defect draining too much battery power, Plaintiff was unable to start her car on three separate occasions, requiring her each time to have the vehicle towed or jumpstarted and taken to a local dealership for repairs. *Id.* at ¶¶ 30–32. Thus, Plaintiff's allegations give rise to a plausible inference that the RDAR defect rendered impacted vehicles unreliable as a form of transportation to violate an implied warranty. *Miller v. Chrysler Group LLC*, No. 12-cv-760, 2014 WL 12617598, at *5 (D.N.J. June 30, 2014) (finding that a leaking sunroof could render a vehicle unreliable in violation of an implied warranty); *Greene*,

2013 WL 5287314, at *3 (finding plaintiff sufficiently pleaded an implied warranty claim where he alleged his vehicle's tires were prone to "catastrophic failure"). Ultimately, whether the RDAR defect and its impact on a vehicle's ability to start makes a car an unreliable form of transportation is "a question of fact to be resolved at summary judgment or by a jury." *George v. Jaguar Land Rover N. Am. LLC*, No. 20-cv-17561, 2021 WL 5195788, at *8 (D.N.J. Nov. 8, 2021). Accordingly, the Court denies Defendant's motion to dismiss the breach of implied warranty claim.

### d) Common Law Fraud (Count III)

Defendant contends that Plaintiff's common law fraud claim should be dismissed because she has not plausibly alleged that Defendant had a duty to disclose issues associated with the RDAR to Plaintiff or other consumers, as is required under either New Jersey or Rhode Island law. ECF No. 125 at 18–20. In opposition, Plaintiff argues Defendant had a duty to disclose the defect, and that she has plausibly alleged that Defendant failed to meet its disclosure obligations whether the claim is evaluated under New Jersey or Rhode Island law. ECF No. 129 at 28–32. Because Plaintiff has asserted that her claim for common law fraud is viable regardless of the outcome of any future choice of law analysis, the Court will analyze Plaintiff's claim under both New Jersey and Rhode Island law.

To state a claim for common law fraud in New Jersey, a plaintiff must plead: "(1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon; and (5) resulting damages." *Flynn-Murphy v. Jaguar Land Rover N.A., LLC*, No. 20-cv-14464, 2021 WL 5448716, at *10 (D.N.J. Nov. 19, 2021). An omission can give rise to a common law fraud claim if the defendant had a duty to disclose the information it chose to omit or conceal. *Cohen v. Subaru of Am., Inc.*, No. 20-

cv-8442, 2022 WL 721307, at *19–*20 (D.N.J. Mar. 10, 2022). For purposes of a fraud claim, a duty to disclose exists in instances of: "(1) fiduciary relationships . . .; (2) relationships where one party expressly reposits trust in another party, or else from the circumstances, such trust necessarily is implied; and (3) relationships involving transactions so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993). A duty to disclose can also exist where a defendant has made a partial disclosure, and further disclosure is then necessary to make the previous statement true. *Schechter v. Hyundai Motor Am.*, No. 18-cv-13634, 2020 WL 1528038, at *16 (D.N.J. Mar. 31, 2020).

Here, Plaintiff has failed to allege Defendant had a duty to disclose under New Jersey law. "New Jersey Courts have found no special relationship between individual consumers and automobile manufacturers that would impose a duty to disclose on the manufacturers." *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 234 (D.N.J. 2020) (citation omitted); *see also Flynn-Murphy*, 2021 WL 5448716, at *10 (collecting cases). Further, Plaintiff has not alleged that Defendant made any partial disclosures that would trigger a duty to disclose. Rather, Plaintiff asserts that Defendant made no public statement regarding the RDAR at all—"[Defendant] deliberately did not disclose this defect to purchasers at the time of purchase. Nor did it conduct a recall of its vehicles or otherwise make Volvo owners aware of the defect through any kind of publicity or notification." ECF No. 124 at ¶ 25. As the Second Amended Complaint does not allege that a purchaser, including Plaintiff, saw or consumed any publication or representation by Defendant regarding RDAR, there were no statements or disclosures to be corrected. As such, Plaintiff has not identified a duty to disclose to purchasers information regarding the RDAR defect. *Schechter*, 2020 WL 1528038, at *17; *Flynn-Murphy*, 2021 WL 5448716, at *10. Accordingly,

Plaintiff has not adequately pleaded a common law fraud by omission claim under New Jersey law.

Turning to Rhode Island law, a common law fraud claim may be based on an omission or concealment. *W. Res. Life Assur. Co. of Oh. v. Caramadre*, 847 F. Supp. 2d 329, 337 (D.R.I. 2012) (citation omitted). However, a fraud claim grounded in an omission or concealment "will not lie absent a duty to speak." *Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d 263, 269 (D.R.I. 2000) (citing *Home Loan & Inv. Assoc. v. Paterra*, 255 A.2d 165, 168 (R.I. 1969)). "Whether a person has a duty to disclose turns on the specific circumstances of the case" *W. Res. Life Assur. Co. of Oh.*, 847 F. Supp. at 337 (citing *Home Loan*, 255 A.2d at 168). While this inquiry may depend on specific circumstances, Rhode Island courts have found a duty to disclose arises in limited instances, including where: 1) a party divulges "facts that if withheld, render other affirmative representations misleading," *W. Res. Life Assur Co. of Oh. v. Conreal LLC*, 715 F. Supp. 2d 270, 285 (D.R.I. 2010), *Alex & Ani, LLC v. Elite Level Consulting, LLC*, 31 F. Supp. 3d 365, 377 (D.R.I. 2014); 2) a party unknowingly makes a false statement and the party later learns of the falsity, *Guilbeault*, 84 F. Supp. 2d at 269 (citing *McGinn v. McGinn*, 146 A. 636, 638 (R.I. 1929)); and 3) a contractual or business relationship exists, *W. Res. Life Assur. Co. of Oh.*, 847 F. Supp. at 340 (citations omitted), *Cardiovascular & Thoracic v. Fingleton*, No. 95-cv-1322, 1995 WL 941470, at *3 (R.I. Super. Ct. Aug. 23, 1995).

Here, Plaintiff has not offered sufficient allegations to establish that Defendant had a duty to disclose information to consumers regarding the RDAR defect under Rhode Island law. Specifically, Plaintiff does not assert that Defendant made affirmative misleading representations which needed to be remedied by disclosing withheld facts. Likewise, Plaintiff does not allege that Defendant unknowingly made false statements to the public. Finally, while the Court recognizes

11

that an inquiry into a duty to disclose under Rhode Island law is a "flexible" one (*W. Res. Life Assur. Co. of Oh.*, 847 F. Supp. at 337), Plaintiff has not identified authority supporting an extension of such a duty over the allegations at present. Accordingly, Plaintiff's claim for common law fraud must also fail under Rhode Island law.

   e) **RIDTPA (Count IV)**

Last among Plaintiff's claims is her assertion that Defendant's conduct violates the Rhode Island Deceptive Trade Practices Act. The RIDPTA protects consumers from "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Chavers v. Fleet Bank (RI), N.A.*, 844 A.2d 666, 670 (R.I. 2004) (quoting R.I. Gen. Laws § 6-13.1-2). However, the RIDTPA does not apply to "actions or transactions permitted under laws administered by the department of business regulation or other regulatory body or officer acting under statutory authority of this state or the United States." R.I. Gen. Laws § 6-13.1-4. The Rhode Island Supreme Court has held that this provision exempts "all those activities and businesses which are subject to monitoring by state or federal regulatory bodies or officers" from liability under the RIDPTA. *State v. Piedmont Funding Corp.*, 382 A.2d 819, 822 (R.I. 1978). The party attempting to avail itself of this exemption must "demonstrate that the general activities complained of are subject to monitoring" by a state or federal regulatory body, after which, "the burden shifts to the party seeking to enforce [a RIDPTA claim] to establish that 'the specific acts at issue are not covered by the exemption.'" *Lynch v. Conley*, 853 A.2d 1212, 1214 (R.I. 2004) (quoting *Piedmont*, 382 A.2d at 822). Here, Defendant asserts that Plaintiff's claims are covered by laws administered by the Federal Trade Commission and the Rhode Island Department of Administration, and, as such, Defendant is exempt from liability under the RIDTPA. The Court considers each of Defendant's exemption arguments in turn.

Beginning with Defendant's exemption argument based on purportedly applicable federal law, Defendant contends that Plaintiff has alleged "a breach of warranty claim masquerading as a RIDTPA claim," and, as a result, the claim is regulated by the Federal Trade Commission ("FTC") via the Magnuson-Moss Warranty Federal Trade Commission Improvement Act. ECF No. 125 at 12–13. The Court finds this argument to be without merit. Plaintiff argues that her RIDPTA claim is based not on any warranty, but is rather based on "Volvo's failure to disclose the true nature of the RDAR battery-draining defect." ECF No. 129 at 18 n.8. Indeed, Plaintiff alleges that "Defendant did not disclose to its customers the true nature of the inherent defect related to 'RDAR' . . . until after the express warranty expired," despite communicating internally with suppliers and dealerships to remedy the issue. ECF No. 124 at ¶¶ 12–13, 23–24, 73. These contentions are distinct from Plaintiff's warranty claim wherein Plaintiff alleges Defendant sold cars that "were not of a merchantable quality due to the defect and the associated problems caused by the defect." *Id.* at ¶ 59; *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1116 (N.D. Cal. 2021) (finding that a claim predicated on a misrepresentation or omission is distinct from a warranty claim).

Turning next to possible exemptions at the state level, Defendant argues its conduct is governed by motor vehicle statutes (the Regulation of Business Practices among Motor Vehicle Manufacturers, Distributors, and Dealers, R.I. Gen. Laws §§ 31-5.1-1–21), which regulate vehicle manufacturers, distributors, and sales, and is enforced by the Rhode Island Department of Administration. ECF No. 125 at 13–16. And more specifically, as, according to Defendant, these motor vehicle laws apply to "dealings in the state directly or indirectly involving the sale or advertising for sale of a motor vehicle," this statutory scheme regulates disputes between purchasers like Plaintiff and car manufactures like Defendant. *Id.* at 14 – 15 (citing R.I. Gen. Laws

§§ 31-5.1-2, 31-5.1-2(c)(5)). Thus, Defendant argues that Rhode Island motor vehicle law exempts Defendant from RIDTPA liability.

The Court finds that, at this stage of litigation, Defendant has not demonstrated that the misconduct alleged here is subject to state motor vehicles law enforced by the Rhode Island Department of Administration, and, as a result, Defendant has not met its burden to avail itself of the RIDTPA's exemption. Rhode Island courts have noted that Rhode Island's motor vehicle statutes regulate "the relationship between automobile dealers, manufacturers, and distributors," and generally "prohibit[] a manufacturer or motor vehicle dealer from engaging in certain unlawful acts and practices" in the course of a manufacturer/dealership relationship. *Saccucci Auto Group, Inc. v. Am. Honda Motor Co.*, No. 08-cv-121, 2009 WL 2175762, at *5 (D.R.I. July 21, 2009); *see Fireside Nissan, Inc. v. Fanning*, 828 F. Supp. 989, 997 (D.R.I. 1993) (noting that statutes such as Rhode Island's motor vehicle laws are "aimed at protecting retail car dealers from perceived abusive and oppressive acts by the manufacturer") (internal quotations and citation omitted)). Based on this general purpose, it is not clear that the statutes referenced by Defendant would apply to a relationship between a customer and a manufacturer. *In re Toyota*, No. 20-cv-337, 2021 WL 5915060, at *12 (N.D. Cal. Dec. 10, 2021) (first noting that Rhode Island motor vehicle laws apply to disputes between manufacturers and dealerships and then declining to find that these laws exempted defendant from liability for a RIDPTA claim brought by consumers). However, even if it does, Plaintiff has sufficiently asserted that the specific acts at issue here are not covered by the motor vehicle laws. In particular, Plaintiff has alleged that Defendant's decision to conceal information regarding the RDAR defect constituted deceptive and unfair trade practices, which lead, in some cases, to induce customers to pay for RDAR repairs outside of their warranty periods. *See, e.g.*, ECF No. 124 at ¶ 73. These allegations relate to conduct separate from the ultimate sale

14

of a vehicle, and thus, if proven, could impose liability under the RIDPTA. *See, e.g., Cohen v. Subaru of Am., Inc.*, 2022 WL 714795, at *28 (finding that omissions regarding defective fuel pumps could sustain a RIDPTA claim).

Accordingly, as it has not met its burden to demonstrate that the RIDTPA's exemption applies to Plaintiff's claim, Defendant's motion to dismiss Count IV is denied.

## V.      CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (ECF No. 125) is denied as to Counts I, II, and IV, and granted as to Count III.  An appropriate Order accompanies this Opinion.

**DATED**:  March 16, 2022

s/ Claire C. Cecchi

**CLAIRE C. CECCHI, U.S.D.J.**