

Peter W. Herzog III
314.326.4129
pherzog@wtotrial.com

December 20, 2024

**VIA ECF**

The Honorable Claire C. Cecchi
Martin Luther King Building & U.S. Courthouse
50 Walnut Street Room 4015
Newark, NJ 07101

  **Re:** *Theresa Jenner v. Volvo Cars of North America, LLC*
     **Case No. 2:15-cv-06152**

Dear Judge Cecchi:

  Together with Hardin, Kundla, McKeon & Poletto, we represent Defendant Volvo Cars of North America, LLC, n/k/a Volvo Car USA LLC ("Volvo") in this matter. This letter responds to your Order of November 26, 2024. (ECF No. 177).

  Plaintiff currently has two motions pending before the Court—her motion for class certification and a motion to exclude one of Volvo's proffered experts. Volvo has three motions pending—a motion for partial summary judgment and motions to exclude both of Plaintiff's proffered experts.

## FACTUAL AND PROCEDURAL BACKGROUND

  This class action alleges that all 2008-2012 MY Volvo vehicles with a remote digital audio receiver ("RDAR") manufactured by Visteon are defective. The named Plaintiff, Theresa Jenner, purchased a new Volvo S40 in April 2009 from a Rhode Island Volvo dealer. She alleges that there's a uniform "defect" in each class vehicle causing its RDAR to consume too much electrical current, depleting the battery, and resulting in premature battery replacement. For those few vehicles that actually experienced an RDAR problem, the cost of a software upgrade is about $300. According to Plaintiff, the possibility of incurring a $300 repair caused all class members to overpay for their vehicles by more than $1500.

  Plaintiff's motion for class certification seeks to certify a nationwide class under the New Jersey Consumer Fraud Act ("NJCFA"), as well as a 32-state implied warranty

# Wheeler Trigg O'Donnell LLP

December 20, 2024
Page 2

of merchantability class. Both classes are defined to include "all purchasers." By defining the classes in this way, Plaintiff includes new and used car purchasers and multiple owners of the same vehicle in the same class. Plaintiff supports her motion for class certification with two proffered experts. The first, Dr. Gilbert, is Plaintiff's defect expert. Plaintiff's other expert, Dr. Agrawal, conducted a survey and uses its results to offer the opinions that an RDAR defect would be material to new car purchasers and would result in them paying less for their Volvos at the time of purchase.

Volvo opposed Plaintiff's motion for class certification and moved to exclude both of her experts on *Daubert* grounds. It supported its opposition with an affidavit from a Volvo engineer, Mr. Barcia. Volvo also moved for partial summary judgment on Plaintiff's individual claim because Rhode Island law, which governs the purchase of her vehicle, requires vertical privity for an implied warranty of merchantability claim.

Plaintiff opposed partial summary judgment and moved to exclude Mr. Barcia's testimony under *Daubert*.

These are the motions now before the Court, with oral argument set January 24, 2024.

## SUMMARY OF VOLVO'S CONTENTIONS

Plaintiff's motion for class certification should be denied for multiple independent reasons, including because (1) the classes are not ascertainable, (2) New Jersey law doesn't apply to vehicles purchased in other states, (3) determining whether an RDAR malfunctioned and why requires individualized inquiry, (4) the vast majority of vehicles in the proposed classes are merchantable as a matter of law, and (5) there's an intra-class conflict between new car purchasers like the named Plaintiff and the used car purchasers that comprise the majority of the class. And denial is required even if Plaintiff's proffered experts were allowed to testify. But because each should be excluded under *Daubert*, the class certification motion lacks any support whatsoever and should be denied with prejudice.

Volvo's motion for partial summary judgment is a straightforward application of Rhode Island law. There's a reason Rhode Island doesn't have many implied warranty consumer class actions like this one—because Rhode Island requires vertical privity between the purchaser and manufacturer. It's undisputed that Plaintiff bought her 2009 S40 from an independent Volvo dealer, not directly from Volvo. As a result, she cannot

# Wheeler Trigg O'Donnell LLP

December 20, 2024
Page 3

pursue a claim against Volvo for breach of the implied warranty of merchantability, and judgment should be entered against her on Count II of the Second Amended Complaint.

In the pages that follow, Volvo explains in more detail why settled Third Circuit, DNJ, and Rhode Island authority requires the end of class proceedings in this case and the dismissal of Plaintiff's implied warranty claim.

**A.    PLAINTIFF'S MOTION FOR CLASS CERTIFICATION SHOULD BE DENIED.**

1.    **The Proposed Classes Are Not Ascertainable**. Plaintiff proposed classes include all purchasers of MY 2008-2012 Volvo vehicles. Those vehicles are now between 12 and 16 years old, meaning almost none of them is owned by the original purchaser. Instead, they are owned by second, third, or even later purchasers, and there simply is no way to identify putative class members who purchased used vehicles. Volvo proffered evidence that it "lacks records to identify all persons who purchased the subject vehicles for either proposed class." (ECF No. 155-4, ¶¶ 7-12.) Plaintiff has offered no evidence of an administratively feasible way to identify class members, so her reply suggested the Court change the class definition at this late date "to purchasers of new or used vehicles solely from Volvo dealers." (ECF No. 161, at 3.) But even that suggested class is not ascertainable because Volvo cannot identify all purchasers of used Volvo vehicles from independent Volvo dealers—that information has to be obtained from the independent dealers themselves. (ECF No. 155-4, ¶ 10.) The lack of ascertainability mandates denying Plaintiff's certification motion. *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 121-22 (3d Cir. 2023); *Neale v. Volvo Cars of N. Am., LLC*, No. CV 10-4407 (JLL), 2017 WL 6055774, at *8-9 (D.N.J. Dec. 6, 2017).

2.    **Legal Variations Predominate**. The Court should deny certification of the proposed classes because legal variations predominate. The request for a nationwide class is doomed because there are outcome determinative conflicts between the NJCFA and other states' consumer fraud laws. (ECF No. 154, at 12-13.) Plaintiff doesn't disagree, but contends instead that the NJCFA can be applied nationwide, relying on Judge Debevoise's discredited decision in *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009). The Third Circuit rejected *Tele Aid* in *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 208 (3d Cir. 2013), and judges in this District repeatedly have declined to follow it. (ECF No. 154, at 15-16.) The case was wrongly decided and is not good law. *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 181 (3d Cir. 2014); *Laurens v. Volvo Car USA, LLC*, No. 218CV08798JMVCLW, 2020 WL 10223641, at *12-13 (D.N.J. Dec. 8, 2020); *see also In re Valsartan, Losartan, & Irbesartan Prods.*

# Wheeler Trigg O'Donnell LLP

December 20, 2024
Page 4

*Liab. Litig.*, No. 19-2875 (RBK/SAK), 2023 WL 1818922, at *61-63 (D.N.J. Feb. 8, 2023) (collecting cases denying certification of nationwide consumer fraud claims because of legal variations). The proposed multi-state implied warranty class suffers from a similar problem. The law of the state where the vehicle was purchased governs the implied warranty of merchantability. (ECF No. 154, at 18-20.) For this reason, legal variations also predominate in the proposed multi-state implied warranty class. *See, e.g., Fenwick v. Ranbaxy Pharms., Inc.*, 353 F. Supp. 3d 315, 331 (D.N.J. 2018); *see also In re Valsartan*, 2023 WL 1818922, at *58-59 (collecting cases rejecting certification of multi-state implied warranty claims because of legal variations).

3.      **Factual Variations also Predominate**. Even a New Jersey only class wouldn't be certifiable under Rule 23. There's no uniform defect affecting all class vehicles—in fact, the evidence is that 98% of vehicles did not experience a problem with the RDAR, and vehicles manufactured in 2008 or in 2011 and 2012 almost certainly never will because they received upgraded software that eliminated the RDAR quiescent current issues. Those class members who have never experienced a problem with their RDAR lack Article III standing. *Neale v. Volvo Cars of N. Am. LLC*, 794 F.3d 353, 368 (3d Cir. 2015); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 441-42 (2021); *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 154 (3d Cir. 2023) (vacating class certification order and remanding to determine whether "[t]he need for individualized inquiry to determine the standing of the unnamed class members" precludes predominance). Likewise, those class members who did not experience a problem with the RDAR, or who had it repaired at no cost, cannot demonstrate an ascertainable loss. *Theidemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783 (N.J. 2005). Determining which class members have standing and/or suffered an ascertainable loss is an individualized inquiry that precludes finding predominance and requires that certification be denied.

4.      **The Proposed Implied Warranty Class Is not Certifiable**. An implied warranty claim requires manifestation of the purported defect, but the evidence demonstrates that more than 98% of class vehicles never experienced a problem with the RDAR. Judge Arleo recently held common questions did not predominate in a similar proposed implied warranty class against Volvo, because each class member would be required to prove individually that she or he experienced the alleged defect, and the occurrence rendered the vehicle unusable or unsafe. *Neale v. Volvo Cars of N. Am., LLC*, No. CV 10-4407, 2021 WL 3013009, at *19 (D.N.J. July 15, 2021); *see also Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 285 (D.N.J. 2011). Even for the very few who actually experienced a problem, there are variations precluding

# Wheeler Trigg O'Donnell LLP

December 20, 2024
Page 5

predominance. A vehicle driven for years or tens of thousands of miles without an RDAR-induced battery failure is merchantable as a matter of law. *Paolucci v. FCA US LLC,* No. CV 23-2982 (ZNQ) (TJB), 2024 WL 3355390, at *3 (D.N.J. July 9, 2024). Each vehicle experiencing a problem also would have to be examined to determine if the RDAR or something else was the cause of a battery failure. (ECF No. 154, at 34-35.) Finally, there is no class representative for the implied warranty claim—Plaintiff bought her Volvo S40 in Rhode Island, so that state's law governs. Rhode Island requires privity for an implied warranty claim, but Ms. Jenner doesn't allege, and can't prove, that element of the claim. As a result, she cannot represent a class of purchasers pursuing implied warranty claims.

      5.      **There are Irreconcilable Intra-Class Conflicts**. The Court should deny certification of both proposed classes because there is an intra-class conflict between Plaintiff, whose damages, injury and ascertainable loss evidence, even if admissible, does not apply to any used vehicles, which comprise the vast majority of class vehicles. This inherent conflict precludes finding Plaintiff an adequate representative. (ECF No. 154, at 35-36.)

**B.**      **PLAINTIFF'S PROFFERED EXPERTS SHOULD BE EXCLUDED UNDER *DAUBERT*.**

      1.      **Dr. Gilbert's Testimony Is Inadmissible**. Dr. Gilbert's opinion is that there's some unknown and undefined *possibility* of an RDAR failure in the class vehicles, and even if that possibility manifests in only one vehicle, all vehicles in the proposed class are "defective." There is no case or treatise that adopts Dr. Gilbert's definition of defect. Indeed under New Jersey law, "unless a defendant manufacturer knows with certainty that a product *will* fail, it does not violate the NJCFA by failing to inform its consumers of the *possibility* of failure." *Alban v. BMW of N. Am., LLC*, No. CIV 09–5398 DRD, 2010 WL 3636253, at *10 (D.N.J. Sept. 8, 2010) (emphasis in original). His "defect" definition thus is contrary to New Jersey law. (ECF No. 171, at 6-7.) Even if admissible, however, his opinion would not support certification, because he conceded that a vehicle-by-vehicle examination would be needed to identify which vehicles that actually experienced a diminished battery life did so because of a problem with the RDAR.

      2.      **Dr. Agrawal's Testimony Is Inadmissible**. Dr. Agrawal's testimony is based on a survey that was not conducted in accordance with standards used by experts in the field. (ECF No. 162-2, at 5.) The violations of generally accepted survey standards

WheelerTriggO'Donnell LLP

December 20, 2024
Page 6

include survey design, sampling methodology, participant panel, and data analysis and interpretation. (*Id.* at 20, *see also id.* at 7-20.) Even setting these aside, Dr. Agrawal's opinion does not apply to used vehicle purchasers, who comprise the overwhelming majority of class members, because her survey addressed the purchase of new vehicles. (ECF No. 153-23, at 9; *see also* ECF No. 154, at 27.) In any event, the argument her testimony is offered to support—that all class members overpaid for their vehicles in an amount approximately equal to *five times* the cost of repair—is absurd and cannot be reconciled with another decision from this District in a different proposed class action brought against Volvo. In *Neale*, 2021 WL 3013009, at *11, Judge Arleo denied class certification of an NJCFA claim where plaintiffs sought to recover as diminished value the actual cost to remedy the alleged defect, because it was "a problem that might not exist caused by a design flaw with no tangible impact on market value." That analysis applies with even greater force here, where Plaintiff contends a purported defect unlikely ever to occur caused every class member to overpay in an amount more than five times the cost of repair.

C.   **VOLVO'S PETER BARCIA SHOULD NOT BE EXCLUDED.**

Plaintiff moved to exclude the opinions of Volvo's Peter Barcia, a Product Follow-Up Engineer at Volvo for more than a decade. Plaintiff's primary argument is that Mr. Barcia only looked at Volvo documents and therefore lacks a reliable methodology. But Dr. Gilbert did nothing more than re-interpret the same Volvo documents. If Plaintiff is correct, the Court must exclude Dr. Gilbert also. But the record demonstrates that Mr. Barcia didn't just interpret documents. He also considered data concerning the number of software upgrades provided to customers and spoke with engineers in Sweden. Mr. Barcia applies his engineering expertise to interpret the technical record. (ECF No. 167.)

D.   **SUMMARY JUDGMENT ON COUNT II SHOULD BE GRANTED.**

There's no dispute that, prior to the 1969 amendment of 6A-2-318, Rhode Island required vertical privity for an implied warranty of merchantability claim. *Henry v. John W. Eshelman & Sons*, 209 A.2d 46 (R.I. 1965); *Klimas v. Int'l Tel. & Tel. Corp.*, 297 F. Supp. 937, 938, 940 (D.R.I. 1969). In 1969, the Rhode Island Legislature amended § 6A-2-318. Plaintiff says this amendment repealed the vertical privity bar for all implied warranty claims whether based on economic damages or personal injury. (ECF No. 159, at 2-3.) But that argument can't be reconciled with the statutory language specifically limiting its reach to a person "who is injured by breach of the warranty," R.I. Gen. Laws Ann. § 6A-2-318, or with Comment 3 to the statute:

# Wheeler Trigg O'Donnell LLP

December 20, 2024
Page 7

> The second alternative, **_which was adopted by Rhode Island_**, is designed for states where the case law has already developed further and for those that desire to expand the class of beneficiaries. **_The third alternative goes further_**, following the trend of modern decisions as indicated by Restatement of Torts 2d § 402A (Tentative Draft No. 10, 1965) **_in extending the rule beyond injuries to the person_**.

Comment 3 to 6A R.I. Gen. Laws Ann. § 6A-2-318 (emphasis added).

Plaintiff has not identified any Rhode Island case in which a court held that the 1969 Amendment eliminated the privity requirement for an implied warranty of merchantability claim for economic injury. Nor has she identified any case that overruled or distinguished *Henry*. Other courts examining this issue since the 1969 amendment hold that Rhode Island retained the vertical privity bar for implied warranty of merchantability claims seeking economic damages. *Zakikhani v. Hyundai Motor Co.*, No. 820CV01584SBJDEX, 2022 WL 1740034, at *9 n.11 (C.D. Cal. Jan. 25, 2022); *Ace Am. Ins. Co. v. Grand Banks Yachts, Ltd.*, 587 F. Supp. 2d 697, 708 (D. Md. 2008). The *Zakikhani* Court dismissed a Rhode Island implied warranty of merchantability claim on lack of privity grounds because a new vehicle purchaser did not purchase the vehicle directly from Hyundai. 2022 WL 1740034, at *9 n.11. Those are the facts here.

While the 1969 amendment ended privity for personal injuries, Rhode Island cases requiring vertical privity for an implied warranty of merchantability claim seeking economic damages remain good law. Rhode Island law requires privity, and there's no dispute Plaintiff lacked privity with Volvo.

Respectfully,

Peter W. Herzog

PWH: